[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} On June 2, 2000, Kim C. Duty re-filed a lawsuit against Ricart Ford, Inc. ("Ricart"), and three of its employees. The complaint which initiated the lawsuit alleged that Ricart was liable to Ms. Duty on a number of theories, including fraud and violations of Ohio's Consumer Sales Practices Act.
 {¶ 2} On July 10, 2000, counsel for Ricart and its employees filed an answer which alleged 17 separate defenses and denied liability in general. Counsel followed up with a set of interrogatories and a request for production of documents. When the responses to these demands for discovery were not timely, counsel filed a motion to compel discovery.
 {¶ 3} The day after filing the motion to compel discovery, counsel for Ricart filed a motion for summary judgment. Attached to the motion was a portion of a deposition of Kim Duty, a copy of a retail buyer's order for a 1995 Pontiac Sunfire, and for a $1300 service contract. The retail buyer's order indicated that Ms. Duty traded in a 1982 Chrysler LeBaron valued at $700 and paid $500 in cash. She signed documents allowing for the sum of $14,273.19 to be financed at an annual rate of 23 percent interest.
 {¶ 4} Also attached to the motion for summary judgment were affidavits from John Finnan, who had been the sales manager for Ricart North at the time of the sale, and Lynn DeWitt, who described herself as an employee of Ricart Automotive working in consumer affairs. In addition, an affidavit from Todd Emerick, who handled advertising for Ricart entities, was provided.
 {¶ 5} On November 30, 2000, the trial court overruled the motion to compel discovery, noting that counsel for Ms. Duty had alleged that the discovery requested had been provided. Counsel for Ricart later alleged that the discovery provided was incomplete.
 {¶ 6} Counsel for Ms. Duty filed a motion asking for an extension of the time allotted for responding to the motion for summary judgment. Ricart opposed the motion and also sought leave to renew its motion to compel discovery. Ricart was permitted to file an amended motion to compel discovery and counsel for Ms. Duty was granted additional time to respond to the motion for summary judgment.
 {¶ 7} When counsel for Ms. Duty filed a response to the motion for summary judgment, counsel appended an affidavit from a Rick Haskall, a former underwriter with Consumer Portfolio Service, Inc. ("CPS"). Mr. Haskall indicated that CPS had a business relationship with Ricart North, but Ricart North was the original creditor in retail sales of automobiles. CPS did not purchase the installment contract signed by Ms. Duty because Ms. Duty's employment status had changed between the time when she signed the contract and when CPS reviewed the documents. CPS did not receive the document pertaining to Ms. Duty until November 15, 1996 — 11 days after she signed the documents. Under a spot agreement between the parties, Ricart had six days to assign the contract to a third party. After six days, Ricart could request the buyer, Ms. Duty, to pay the full cash price or return the vehicle. CPS returned the paperwork to Ricart on November 21, 1996.
 {¶ 8} On November 19, 1996, Ricart North had obtained a title for the Sunfire for Ms. Duty and had listed CPS as the first lien holder. A copy of the title was forwarded by mail to Ms. Duty. In late November of 1996, she moved to Florida, according to her affidavit filed in response to the motion for summary judgment.
 {¶ 9} Ms. Duty claimed that in December 1996, she was threatened into returning the Sunfire to Ricart North. The Chrysler LeBaron she had traded in was returned to her, but it was no longer operable. These were the basic facts before the trial court when it ruled on the motion for summary judgment.
 {¶ 10} Counsel for Ricart and counsel for Ms. Duty had written interaction regarding the filing of the response to the motion for summary judgment. Charges of unethical conduct were exchanged in documents which were filed as part of the record.
 {¶ 11} On March 28, 2001, counsel for Ricart filed a motion requesting leave to file an amended answer. Two days later, counsel for Ricart filed its reply in support of its motion for summary judgment.
 {¶ 12} On April 10, 2001, counsel for Ms. Duty filed a memorandum contra Ricart's motion to amend its answer. The trial court addressed the many motions before it.
 {¶ 13} On August 3, 2001, the court removed all theories of recovery under the Ohio Consumer Sales Practices Act from the case except a theory based upon R.C. 1345.02(B)(9), a part of the Ohio Consumer Sales Practices Act barring commission of an unfair or deceptive act in connection with a consumer transaction by claiming a sponsorship, approval or affiliation the supplier does not have. This theory was later the subject of a directed verdict at the close of opening statement at trial.
 {¶ 14} The trial judge overruled the Ricart motions for summary judgment with respect to the fraud theories, but sustained the motion with respect to an intentional infliction of emotional distress theory and to a criminal extortion fraud theory. A breach of contract theory presented in the complaint continued as a theory of recovery, in part because it was not part of Ricart's motion for summary judgment.
 {¶ 15} The trial court permitted Ricart to file an amended answer and formally allowed Kim Duty's counsel to file the reply to the motion for summary judgment already submitted.
 {¶ 16} Counsel for Ms. Duty next filed a motion requesting leave to amend the complaint so that the correct Ricart entity could be named the primary defendant. The new primary defendant was entitled Ricart Properties, Inc. (remaining hereinafter "Ricart"). By agreed entry, Ricart Ford, Inc., was dismissed as a party and the amended complaint was permitted to be filed. Ricart filed an answer to the amended complaint.
 {¶ 17} Discovery proceeded. Ricart soon thereafter filed a motion asking the trial court to reconsider its earlier ruling and to grant summary judgment on the fraud theories of recovery. Counsel for Ms. Duty filed a memorandum contra, to which Ricart responded with a reply memorandum and a second affidavit from Todd Emerick regarding Ricart advertising. The trial court overruled the motion for reconsideration approximately one month before the scheduled trial date.
 {¶ 18} Counsel for Ricart served notice of a videotape deposition to be taken of a witness in Tampa, Florida. Counsel for Ms. Duty moved for a protection order because the deposition had not been the subject of an agreement and because counsel were scheduled to appear before a court of appeals the same date. Apparently, the deposition did not take place.
 {¶ 19} The case proceeded to trial on February 21, 2002. As indicated above, the trial court directed a verdict on the remaining Ohio Consumer Sales Practices Act theory at the close of opening statement. Later in the trial, the judge removed the possibility of punitive damages from the case by refusing to charge the jury on punitive damages. The jury returned a verdict for Ms. Duty in the sum of $15,047.27, and answered a series of 16 interrogatories, including an interrogatory indicating that Ms. Duty was entitled to payment of her attorneys' fees and an interrogatory finding fraud by Ricart.
 {¶ 20} After the trial, Ricart filed a motion asking for judgment notwithstanding the verdict or for a remittitur. The trial judge ultimately granted the motion, giving Ms. Duty a judgment for $868.06 in compensatory damages and $10, 000 in attorneys' fees.
 {¶ 21} Counsel for Ms. Duty has filed a direct appeal, assigning three errors for our consideration:
 {¶ 22} "1. The Trial Court erred in granting Defendants-Appellees' Motion for a Directed Verdict as to Plaintiff-Appellant's Consumer Sales Practices cause of action, at the close of opening statements.
 {¶ 23} "2. The Trial Court erred in refusing to issue a jury instruction as to whether Plaintiff-Appellant was entitled to punitive damages against Defendants-Appellees.
 {¶ 24} "3. The Trial Court erred in sustaining Defendants-Appellees' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Remittitur and New Trial, whereby the Trial Court reduced the damages awarded by the jury to Plaintiff-Appellant."
 {¶ 25} Ricart has pursued a cross-appeal, assigning seven errors for our consideration:
 {¶ 26} "1. The Trial Court erred in denying the Motion of Appellee Ricart Properties, Inc. for Partial Summary Judgment seeking dismissal of Appellant Kim Duty's claim for fraud.
 {¶ 27} "2. The Trial Court erred in issuing interrogatories to the jury on whether Appellee Ricart Properties, Inc. committed fraud by threatening criminal prosecution.
 {¶ 28} "3. The Trial Court erred in denying the Motions of Appellee Ricart Properties, Inc. for directed verdict and for judgment notwithstanding the verdict as to Appellant Kim Duty's claim for fraud based on a threat of possible criminal prosecution.
 {¶ 29} "4. The Trial Court erred in awarding attorney fees based on a jury finding of `bad faith fraud.'
 {¶ 30} "5. The Trial Court erred in issuing jury instructions and interrogatories to the jury on whether Appellee Ricart Properties, Inc. committed `bad faith fraud' and should pay attorney fees.
 {¶ 31} "6. The Trial Court erred in denying the Motion of Appellee Ricart Properties, Inc. for judgment notwithstanding the verdict as to Appellant Kim Duty's claim for breach of bailment.
 {¶ 32} "7. The Trial Court erred in issuing jury instructions and interrogatories on whether Appellee Ricart Properties, Inc. was in breach of bailment."
 {¶ 33} Subsequent to this case and these assignments of error being submitted to the court at oral argument, the court was advised that Kim Duty had filed for bankruptcy. After initially instituting a stay, this court lifted the stay and substituted Larry J. McClatchy, the trustee in the bankruptcy, as the real party in interest.
 {¶ 34} Some parts of this case are disputed, but the jury made findings and the trial judge affirmed these findings based upon testimony which indicated that Kim Duty went to Ricart North in search of a different motor vehicle. She saw a 1995 Pontiac Sunfire which she liked. A salesman for Ricart promised her that financing for the sale would be arranged and, as a result, Kim eventually went ahead, paid $500 and provided her 1982 Chrysler LeBaron as a trade-in valued at $700. She then took delivery of the Sunfire. Soon thereafter she quit her job in Ohio and moved to Florida where she got another job.
 {¶ 35} Ms. Duty was not initially notified that there was a problem with financing. In fact, she received a memorandum of title obtained on her behalf by Ricart. The title named Ms. Duty the titled owner, subject to a lien from lender CPS, Inc. She had already signed paperwork which specified her monthly payment and annual percentage rate of interest on the loan. CPS, however, had not finally accepted the commercial paper from Ricart. Instead, CPS ultimately refused to take over the loan.
 {¶ 36} When Ricart was notified that CPS would not purchase the commercial paper, Ricart chose to attempt to rescind the transaction rather than carrying the commercial paper itself or finding another financial institution to purchase the paper. Ricart made this decision despite the fact that Ricart had already arranged for title to the Sunfire to be transferred from Ricart to Kim Duty.
 {¶ 37} An employee of Ricart called Ms. Duty's father in Zanesville, Ohio and conveyed a message for him to convey to Kim. The message was that the financing had fallen through, that Kim was not legally in possession of the car and that she had to return the car to Ricart or face criminal charges.
 {¶ 38} The message, which was only partially true, had its desired effect. Ms. Duty quit her job and drove the Sunfire back from Florida. She turned the Sunfire back in to Ricart and then learned that the Chrysler LeBaron which she had given as a trade-in, and for which Ricart had acquired its own title, had been vandalized while in Ricart's possession. The LeBaron was inoperable and had to be towed.
 {¶ 39} Based upon these facts, the jury attempted to award Ms. Duty the full value of the Pontiac Sunfire, the value of the damage to her Chrysler LeBaron, damages for her lost time and wages, and attorneys' fees. The awards were based upon theories of a breach of contract, apparently two separate fraud theories and a breach of bailment theory.
 {¶ 40} One fraud theory was based upon a material misrepresentation that Ricart could arrange financing for Ms. Duty. The trial judge rejected the theory, without benefit of a trial transcript, but based upon his own recollection of the testimony. The trial judge found that the salesman who promised Kim Duty financing did not know that Kim was going to lose her job in a few days and move to Florida. Therefore, the salesman did not know and could not know that CPS would refuse to purchase the commercial paper from Ricart.
 {¶ 41} The trial judge did find that fraud had been demonstrated with respect to a second set of facts, the misrepresentation about Ms. Duty being subject to criminal charges if she did not immediately return the Sunfire to Ricart. Ricart knew it had obtained legal title to the Sunfire for Kim Duty and had no valid basis for threatening her with some sort of theft charge if she did not bring the car back to them.
 {¶ 42} Ricart's threats, as supported by the evidence in Kim Duty's case, were sufficiently outrageous to justify the award of punitive damages if the jury chose to award them. The trial judge, perhaps focusing on the financing misrepresentation as opposed to the threat of criminal charges, did not allow this issue to go to the jury. In taking the punitive damages issues away from the jury, the trial judge committed prejudicial error.
 {¶ 43} Appellant Kim Duty's second assignment of error is sustained.
 {¶ 44} The trial court, at the end of opening statements, took the issue of violation of R.C. 1345.02(B)(9) out of the trial. In opening statement, counsel for Ms. Duty stated:
 {¶ 45} "We intend to prove to you that the defendant committed an unfair, deceptive practice pursuant to the Ohio Revised Code and/or the Ohio Consumer Sales Practices Act. That would be that the plaintiff was a consumer, that the defendant was a supplier, that the defendant committed an unfair, deceptive act, that before, during, or after the transaction between the two, plaintiff and defendant, that the defendant had a sponsorship for approval or affiliation in, and let her know that, or let her believe that, that they did not have, and that the plaintiff suffered damages as a result of the defendant's actions.
 {¶ 46} "* * *
 {¶ 47} "They also withheld information from Miss Duty, which she should have known, which would have alerted her to some of these things. They had the intent of misleading her into relying upon it. She justifiably relied on their representations or their lack thereof and/or their concealment, and that there was a resulting injury, and it was proximately caused by her reliance on her representation and/or their lack of representation and/or their actions." (Tr. 90-92.)
 {¶ 48} We believe these statements sufficiently set forth a claim for violation of R.C. 1345.02(B)(9), which reads:
 {¶ 49} "Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
 {¶ 50} "* * *
 {¶ 51} "(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have[.]"
 {¶ 52} The standard the trial court is to apply in directing out a claim at the end of opening statement is set forth in Civ.R. 50(A)(4) as follows:
 {¶ 53} "Motion for directed verdict
 {¶ 54} "* * *
 {¶ 55} "(4) When granted on the evidence. When a motion or a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 56} The Ohio Supreme Court has indicated in Brinkmoeller v. Wilson (1975), 41 Ohio St.2d 223, at the syllabus;
 {¶ 57} "A trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made."
 {¶ 58} Given the standard set forth in Civ.R. 50(A)(4), as interpreted in the Brinkmoeller case, we believe the trial court erred in removing a claim for violation of R.C. 1345.02(B)(9) from the case at the close of opening statement.
 {¶ 59} The first assignment of error is also sustained.
 {¶ 60} Given the theories the trial court allowed to go to the jury, we cannot find error in the trial court's ruling on the motion seeking remittitur. The jury apparently thought that Ms. Duty should get more in damages than the jury charge they heard allowed them to award. As a result, they tried to give Ms. Duty the value of the Sunfire without making her pay for it. This jury award placed Ms. Duty in a far better position than she would have been in had Ricart given her accurate information about financing and accurate information about her legal right to possess the Sunfire.
 {¶ 61} The trial court correctly reduced the jury's verdict.
 {¶ 62} The third assignment of error of Kim Duty is overruled.
 {¶ 63} We turn next to the seven cross-assignments of error assigned on behalf of Ricart.
 {¶ 64} The first five assignments of error all address issues regarding the fraud claim found by the jury and affirmed by the trial judge as part of his ruling on the motion for judgment notwithstanding the verdict/motion for new trial. We will address these assignments of error together.
 {¶ 65} Counsel for Ricart argues that a false threat of a criminal prosecution cannot be the basis for a fraud claim. The common law elements of a fraud claim are: (1) knowing; (2) misrepresentation; (3) of a material fact; (4) upon which a person relies; (5) to his or her detriment.
 {¶ 66} The testimony before the jury and the evidence before the court when addressing the motion for summary judgment indicates that an employee of Ricart who knew that Ricart had given legal title to the Pontiac Sunfire to Kim Duty misrepresented the legality of her possession of the car, leading her to believe that she was in danger of criminal prosecution. Kim Duty then relied upon that perceived danger to her detriment by leaving employment in Florida and driving to Ohio at a cost of her out-of-pocket expenses for the trip and the income from her Florida employment.
 {¶ 67} Simply put, the elements of fraud are satisfied by the facts of Kim Duty's case. The fact that the threat/misrepresentation in her situation was a threat involving criminal liability does not bar the application of the classic common law elements of fraud.
 {¶ 68} The first, second and third cross-assignments of error are overruled.
 {¶ 69} Ricart's fourth and fifth cross-assignments of error assert that "bad faith fraud" was not demonstrated in the court below. With respect to the knowing misrepresentation about the possibility of criminal prosecution, the evidence fully supports the trial court's ruling. Again, an employee/agent of Ricart, rather than embark on the longer course of seeking a civil remedy to undo the results of its obtaining a title to the Pontiac Sunfire for Kim Duty, took the shorter route of threatening Ms. Duty into bringing the Sunfire back and signing paperwork to allow them to undo their mistakes. Ricart's conduct was beyond bad faith. The jury and trial court had more than adequate basis for awarding attorneys' fees.
 {¶ 70} The fourth and fifth cross-assignments of error set forth by Ricart are overruled.
 {¶ 71} Ricart's sixth and seventh cross-assignments of error argue that the jury and trial court were wrong to award damages for the harm done to Kim Duty's trade-in, the Chrysler LeBaron, while it was in Ricart's possession. Given the fact that Ricart was attempting to rescind the sales transaction involving the Pontiac Sunfire, Ricart had an obligation to be able to return the Chrysler LeBaron to Kim Duty in the same condition it was in when she surrendered possession of it. Failing that, Ricart should have rendered the cash value of the trade-in, $700. Ricart did neither, but allowed Kim to have the now-inoperable LeBaron towed away at her expense.
 {¶ 72} The trial judge was fully justified in submitting this issue to the jury and in refusing to overturn the jury's award of damages based on the harm done to the Chrysler LeBaron while it was in Ricart's possession.
 {¶ 73} Ricart's sixth and seventh cross-assignments of error are overruled.
 {¶ 74} In summary, we sustain Kim Duty's first and second assignments of error, but overrule her third assignment of error. We overrule Ricart's seven cross-assignments of error. As a result, we reverse the judgment of the Franklin County Court of Common Pleas, and remand the case for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
PETREE, P.J., concurs.